## RANKIN & CO. v. THE CITY OF CINCINNATI.

The city of Cincinnati contracted with Bearly to erect a school-house for $81,000, and Bearly made subcontracts with plaintiffs and with others to do parts of the work. The plans of the building were in some respects modified, and considerable extra work, including an extra privy, was done, increasing the cost beyond the original contract price. The contractor failing to pay plaintiffs, they served a notice of the balance due on their claim for work which would have been included within the terms of the original contract. At the time of the service of the notice by the plaintiffs, the city had paid Bearly the entire sum of $81,000, which was the amount called for by the original contract, but the city nevertheless owed Bearly $1,377 by reason of the extra work. Several of the defendants filed claims for work done on the same building, but not provided for in the original contract, unless it were under the clause providing that extra work should be stipulated for in writing and signed by the parties: ,

*Held*, that the formalities required by the contract for extra work might be and were waived, and that the extra work was to be regarded as done under one general contract embracing the entire job, and that the plaintiffs were entitled by priority of notice to establish a priority of lien upon the fund in the hands of the city against those who performed the extra work as well as against those claimants whose work was done within the terms of the original contract.

*Held*, also, that the city clerk's office was the proper place at which to serve the notice, and the clerk the proper agent on whom to serve it, and that the plaintiffs having first presented the statement of their claim at the clerk's office to the clerk, were entitled to be first paid out of the fund.

*Decamp*, for plaintiffs.

*Moore, Conner & Warrington*, for city.

*Mills & Wulsin, Hoadly & Johnson*, and *Tyler*, for claimants.

TAFT, J. This is a contest between subcontractors for a fund due from the city to Bearly for work done for the city in connection with the Franklin-street school-house. The balance of funds in the hands of the city was $1,377, while the claims of subcontractors amounted to much more. The first question, relating to priority among the cred-

itors, turns upon the notice of their respective claims upon the city. The plaintiffs, Rankin & Co., were the first to leave at the office of the clerk of the board of education a statement and notice of their claim. They left their statement and notice at the office on the morning of the 18th of August, 1870. The clerk was himself out of the city, but there was a messenger or officer who kept the office open.

Dunn & Witt deposited their claim in the office at 5 P. M., August 22d.

The clerk returned to the office on the morning of August 22, 1870.

These claims were read to the board of education on the same day, that is, at the meeting in the evening of the 22d of August.

There are none others to compete with these in point of time, but the other parties contest on a different principle, to which we shall soon refer.

As between these parties, we think the plaintiffs are prior in time with the service of their notice. It seems to us that they presented their notice to the right place and to the right person. The notice of the claim of Rankin & Co. must have actually reached the clerk before that of Dunn & Witt, if we are to rely upon the probabilities arising on the evidence, as the clerk returned to the office on the morning of the day in the afternoon of which Dunn & Witt presented their account, the plaintiffs' account having been presented four days before.

The contract itself provides, "That if any of the subcontractors of said work shall, at any time during the progress of said work, give notice to said board that they have not received pay for their estimated portion of said work, according to the terms of their agreement with said Bearly, then in such case *it shall be lawful for the clerk of said board to settle directly with such subcontractors*, their receipts for such direct payments to be taken as *absolute payment and satisfaction* for so much of the contract price of said house."

This clause in the contract recognizes the clerk as the

agent of the board for payment of the subcontractors as well as of the principal contractor, and as the medium of communication between them and the board. So far, then, as the question of notice is concerned, we find the plaintiffs first and Dunn & Witt next. The claim of the plaintiffs is for $3,313.23, and that of Dunn & Witt for $1,082, so that they absorb the entire balance of $1,377 in the hands of the city, unless the other subcontractors can show that they are entitled to the fund on some other principle than mere priority in the time of filing their claims; and if the plaintiffs are first entitled they take the whole and leave nothing even for Dunn & Witt. There are other claims like that of the plaintiffs, beside that of Dunn & Witt, but they must be postponed because they were later in the time of presenting their accounts.

It has been suggested that the subcontractors ought all to stand on an equality, upon the authority of *Choteau* v. *Thompson*, 2 Ohio St. 114, and that the decision of this court in *McCullom* v. *Richardson*, 2 Handy, 276, was not consistent with the ruling of the Supreme Court, but we do not feel the difficulty suggested. It seems to us that the distinction taken by Judge Gholson was sound—holding that although the liens taken by mechanics for work done in erecting the same building are equal as to priority, yet the subcontractors, who present their accounts against the contractor or builder, like attaching creditors, if prior in time, are better in right as between themselves. But Greenlees & Ransom Co. and Long claim that neither the plaintiffs nor Dunn & Witt are entitled to any part of this fund until they have been paid, because the claims of plaintiffs and of Dunn & Witt were for work done and materials furnished under the written contract with Bearly to build the school-house for the sum of $81,000, which had been paid when these claims of the plaintiffs and of Dunn & Witt were presented. They claim that this fund now remaining in the hands of the city was destined to pay for extra work which was not done under the said written contract.

The claim is, and the evidence shows, that the bills of the plaintiffs and Dunn & Witt were all for work done under the original written contract, and not for extra work and materials. It is claimed that the bills of the other subcontractors, Greenlees & Ransom Co. and Long, were for work extra the written contract and extra the $81,000. The principal item of this extra work consisted of the work and materials for a frame privy.

The second section of the mechanics' lien act, S. & C. 834, provides that every person doing work or furnishing materials for a building erected under a contract between the owner and builder, whose bill has not been paid, may deliver to the owner an attested account, and thereupon the owner shall retain from the contractor an amount to meet the bill presented. The act contemplates that the work has been done by the subcontractor under an employment or contract with the builder.

The $1,377 which the city still owed is supposed to be for extra work and materials not specifically called for by the written contract, unless under the clause relating to extra work and changes. This clause was as follows: " Moreover, it is understood and agreed that if any changes in said plans and specifications and the work corresponding thereto are considered advisable or necessary the same may be done, and shall be executed by said Bearly at such price as may be agreed upon between him and the superintendent of building ; but the same shall not be made without the consent of the building committee of said board, nor unless a memorandum of said changes and the price thereof be first made and signed by said Bearly and said superintendent."

We think that the city might and did waive the formalities as to extras provided for in this contract, but did not thereby prevent them from being part of the job and falling under the general contract.

What, then, was the nature of the extra work and materials done and furnished here for which the city owes Bearly.

The principal item was a frame privy, for which there was

a new specification separate from and subsequent to the original plans and specification, and not signed. It was a separate building, though part of the establishment, and substituted in place of a brick building which was to have been erected in the same place. There were other items of extra work for which no written subsequent stipulation or specification is shown to have been made or signed.

Greenlees & Ransom Co. present a claim of $223.18, work and materials done and furnished for the frame privy, and of $100.50 for other extra work and materials not included in the original contract nor by additional and supplementary written stipulations, making their entire claim $323.68.

Edwin Long presented a similar claim of $35 for painting the extra privy, other extra work $29.70—making in all $64.70.

Both these claims amount to but $388.58, so that if allowed there would still be a balance of nearly $1,000 in the hands of the city as to which the question would remain, whether the plaintiffs and those holding like claims could reach it by this proceeding; for, if they can reach it at all, it is not apparent why they should not reach it in their order, that is, in the order of time of service of notice; and if they did not get such a lien as to maintain their order of time against the liens subsequently taken, we know of no principle on which they can be held to have any lien or claim at all upon this fund in this case. But we think that the policy of the mechanics' lien law requires that extra work and extra materials done and furnished on a job which a contractor has contracted in general to perform, shall be included in the lien taken under the act, and that the notice served upon the owner covers the money due for the extras as well as that which is called for by the original plan and specifications. This was held in New York, *McAuley* v. *Mildrum,* 1 Daly's R. 396, 399, where the court say, "As there was some evidence that this work became necessary, in consequence of defects in the plan, I think that it might fairly be regarded as

covered by the notice, and that the referee did right to allow it."

If there were no unpaid subcontractors except the plaintiffs, would they have a right to stop this fund by presenting their account?

This is but another form of the same question we have been considering. It seems to us that this indebtedness of the city falls within the purview of the contract as regarded by the statute.

It was held in *Choteau* v. *Thompson*, that "where materials are furnished, from time to time, *for a particular purpose*, as, for instance, the construction of a house, and the dates are so near each other as to constitute one running account, the lien dates from the time the first article was supplied, although, strictly speaking, the articles were not furnished under one entire contract." Nor is there priority among different lien-holders. "The idea upon which the law proceeds is, that the building is the result of the labor and materials of the various persons: material, men, stonemasons, brick-layers, carpenters, painters, etc. The work of some of these must precede that of others, but each contributes his proper share to the value of the structure. Its value, when finished, is derived from these several contributions."

On the whole case we conclude that the plaintiffs are entitled to the fund, and that the judgment must be rendered accordingly; but all the costs may be paid out of the fund.